No. 108,097

In the Matter of CRAIG E. COLLINS, *Respondent*.
(288 P.3d 847)

Opinion filed November 30, 2012.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause, and was on the formal complaint for the petitioner.

*Craig E. Collins*, respondent, argued the cause pro se.

*Per Curiam*: This is a contested original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Craig E. Collins, of Topeka, an attorney admitted to the practice of law in Kansas in 1988.

On December 8, 2011, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent's motion for additional time to answer was granted, and he filed an answer on January 12, 2012. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on January 25, 2012, where the respondent was personally present. The hearing panel determined that respondent violated KRPC 1.3 (2011 Kan. Ct. R. Annot. 433) (diligence), 1.15(a) and (d)(1) (2011 Kan. Ct. R. Annot. 519) (safekeeping property and preserving client funds), 8.1(b) (2011 Kan. Ct. R. Annot. 609) (failure to respond to lawful demand for information from disciplinary authority), 8.4(g) (2011 Kan. Ct. R. Annot. 618) (engaging in conduct adversely reflecting on lawyer's fitness to practice law), and Supreme Court Rule 207(b) (2011 Kan. Ct. R. Annot. 314) (failure to cooperate in disciplinary investigation).

The panel heard evidence in two separate complaints. In the first complaint, DA11202, the panel found violations of the KRPC due to overdrafts on the respondent's attorney trust account and his failure to cooperate during the investigation of the overdrafts. In the second complaint, DA11399, the panel found that the respondent violated the KRPC by not diligently preparing tax returns

for complainants, Pete and Paula Hanes. The panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

### "DA11202

. . . .

"9.   On May 26, 2010, pursuant to KRPC 1.15(f)(1), Core First Bank & Trust in Topeka, Kansas, reported to the Disciplinary Administrator that the Respondent overdrew his trust account.

"10.   KRPC 1.15(f)(1) provides:

'(f)(1) Every federal or state chartered or licensed financial institution referred to in KRPC 1.15(d)(1) shall be approved as a depository for lawyer trust accounts if it files with the Disciplinary Administrator an agreement, in a form provided by the Disciplinary Administrator, to report to the Disciplinary Administrator in the event any properly payable instrument is presented against a lawyer trust account containing insufficient funds, whether or not the instrument is honored.'

"11.On July 21, 2010, the Disciplinary Administrator sent the Respondent an overdraft notification regarding his trust account. The overdraft notification contained information that a $200.00 debit had been presented for payment on the Respondent's trust account when the available balance was $6.00. [Footnote: At the hearing on this matter, the Respondent testified that he did not authorize the credit card company to debit his account by $200.00. However, the Respondent's testimony in his regard lacks credibility. It is unbelievable to the Hearing Panel that a company would agree to forego collection on the Respondent's client's debt by the Respondent simply providing an account number and routing number. Clearly, the company collected the information regarding the Respondent's bank's routing number and his attorney trust account number with the intent to satisfy the Respondent's client's debt.] The Disciplinary Administrator directed the Respondent to provide a written explanation of the overdraft within 15 days. The Respondent failed to do so.

"12.   On June 1, 2010, Core First Bank & Trust reported to the Disciplinary Administrator that the Respondent again overdrew his trust account. On June 15, 2010, the Disciplinary Administrator sent the Respondent an overdraft notification regarding his trust account. The overdraft notification indicated that the $200.00 debit referred to above was presented to the bank for payment a second time. At that time the $200.00 debit was presented to the bank the second time, the Respondent's trust account had an available balance of $3.00. The Disciplinary Administrator directed the Respondent to provide an explanation for the overdraft within 15 days. The Respondent failed to do so.

"13.   On July 23, 2010, Core First Bank & Trust reported that the Respondent overdrew his trust account for a third time. On August 19, 2010, the Disciplinary

Administrator forwarded the Respondent a third overdraft notification regarding his trust account. The overdraft notification indicated that a $330.00 check had been presented for payment on the Respondent's trust account when the Respondent had an available balance of $29.88. The Disciplinary Administrator, again, directed the Respondent to provide a written explanation of the overdraft within 15 days. The Respondent failed to do so.

"14.    On October 1, 2010, the Respondent wrote a check in the amount of $275.00 drawn on his trust account made payable to the Clerk of the Appellate Court for his annual attorney registration fee and an associated late fee. At the time the check was presented for payment, there was an available balance of $4.88. Core First Bank & Trust returned the check. On October 4, 2010, Core First Bank & Trust reported to the Disciplinary Administrator that the Respondent overdrew his account for a fourth time.

"15.    On October 6, 2010, the Respondent wrote a check for $170.00 to the Kansas Continuing Legal Education Commission for the annual fee and a late fee. At the time the $170.00 check was presented for payment, the Respondent's trust account was overdrawn by $20.12. On October 7, 2010, Core First Bank & Trust reported to the Disciplinary Administrator that the Respondent overdrew his trust account for a fifth time.

"16.    On October 8, 2010, Core First Bank & Trust reported that the Respondent overdrew his trust account for a sixth time. The $275.00 check written to the Clerk of the Appellate Courts was presented for a second time for payment. At the time the check was presented for a second time for payment, the Respondent's trust account was already overdrawn by $45.12.

"17.    Because the Respondent repeatedly overdrew his trust account and because the Respondent failed to provide written explanations as directed, the Disciplinary Administrator docketed a complaint against the Respondent. On October 13, 2010, the Disciplinary Administrator wrote to the Respondent, informed him that a complaint had been docketed for investigation, and directed the Respondent, again, to provide a written response to the complaint. The Disciplinary Administrator directed the Respondent to provide a written response within 10 days. The Respondent failed to provide a written response within 10 days.

"18.    The Disciplinary Administrator appointed Martin L. Miller, Special Investigator for the Disciplinary Administrator, to investigate the complaint. Initially, Mr. Miller attempted to contact the Respondent by telephone. Each time Mr. Miller called the Respondent's office telephone number, Mr. Miller received a busy signal. After a few days of attempting to reach the Respondent by telephone, Mr. Miller went to the Respondent's office and left his business card. Later that day, the Respondent called and left a voice mail message for Mr. Miller. Additionally, the Respondent sent Mr. Miller an electronic mail message.

"19.    Eventually, on December 3, 2010, the Respondent provided written responses to the complaints.

"20.    At the hearing on this matter, the Respondent testified that during the time in question, he did not have any client funds in his attorney trust account.

"Standard of Proof

"21. 'Attorney misconduct must be established by clear and convincing evidence.' *In re Patterson,* 289 Kan. 131, 133-34, 209 P.3d 692 (2009). 'Clear and convincing evidence is "evidence that causes the fact finder to believe that the truth of the facts asserted is highly probable.' " (quoting *In re Dennis,* 286 Kan. 708, 725, 188 P.3d 1 [2008]). Thus, in order for the Hearing Panel to conclude that the Respondent violated the Kansas Rules of Professional Conduct, the Hearing Panel must conclude that truth of the facts asserted to support the violations is highly probable.

"KRPC 1.15

"22. KRPC 1.15 provides:

'(a) *A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.* Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

. . . .

'(d) Preserving identity of funds and property of a client.

(1) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable accounts maintained in the State of Kansas with a federal or state chartered or licensed financial institution and insured by an agency of the federal or state government, and *no funds belonging to the lawyer or law firm shall be deposited therein* except as follows:

(i) Funds reasonably sufficient to pay bank charges may be deposited therein.

(ii) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.' (Emphasis added.)

"23. Because the Respondent did not have any client funds in his attorney trust account, it is clear that the Respondent had personal funds in his attorney trust account. Thus, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a) and KRPC 1.15(d)(1) by holding personal funds in his attorney trust account.

"KRPC 8.4(g)

"24. 'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC

8.4(g). In this case, the Respondent overdrew his attorney trust account on six occasions. Three of the overdrafts were the result of the Respondent using his attorney trust account for expenses associated with maintaining his license to practice law. Additionally, the Respondent knew that at the time he wrote the checks that there were insufficient funds in the account to cover the checks. The Respondent's use of his trust account in this fashion adversely reflects on his fitness to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g).

### "KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b)

"25.     Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . .' KRPC 8.1(b).

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b).

The Respondent knew that he was required to forward written responses—he had been repeatedly instructed to do so in writing by the Disciplinary Administrator. Because the Respondent knowingly failed to provide timely written responses to the overdraft notices, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

### "DA11399

"26.     Pete Hanes retained the Respondent to provide legal representation, including the preparation of Mr. Hanes' income tax returns and business transactions. Prior to tax year 2001, the Respondent prepared and filed the income tax returns without delay.

"27.     In January, 2000, Mr. Hanes married Paula Hanes. Mr. and Mrs. Hanes retained the Respondent to continue to prepare their federal and state income tax returns. Mr. and Mrs. Hanes timely provided the Respondent with the necessary information to prepare their federal and state income tax returns for 2001, 2002, 2003, 2004, and 2005. [Footnote: At the hearing on the formal complaint, the Respondent testified that he could not prepare the tax returns because Mr. and Mrs. Hanes failed to provide him with required information that he requested. Mr. and Mrs. Hanes testified that with regard to the 2001, 2002, 2003, 2004, 2005, 2008, and 2009 tax years, they timely provided him with all requested information. The Respondent's testimony on this subject lacks credibility.] However, the Respondent failed to prepare Mr. and Mrs. Hanes' federal and state income tax returns for 2001, 2002, 2003, 2004, and 2005.

"28.  Beginning in approximately 2005, Mr. and Mrs. Hanes began receiving correspondence from the IRS and the Kansas Department of Revenue regarding their failure to file income tax returns and pay their income taxes. Each time Mr. and Mrs. Hanes received correspondence from the IRS or the Kansas Department of Revenue, Mr. Hanes personally delivered the correspondence to the Respondent.

"29.  Throughout the period of representation, Mr. Hanes placed telephone calls to the Respondent. Many times when Mr. Hanes called, the Respondent's voice mail box would be full. When Mr. Hanes was able to leave a message for the Respondent, the Respondent failed to return many of the telephone calls. On the occasions Mr. Hanes was able to reach the Respondent, many times the Respondent would attempt to change the subject from a discussion of the completion of the taxes to other subject matters.

"30.  Mr. and Mrs. Hanes questioned the Respondent regarding the status of the preparation of the 2001, 2002, 2003, 2004, and 2005 federal and state income tax returns. The Respondent repeatedly provided Mr. and Mrs. Hanes with excuses for his failure to complete the income tax returns. Additionally, the Respondent promised Mr. and Mrs. Hanes that taxes were nearly complete and that he would be completing them shortly.

"31.  In 2006, Mrs. Hanes started a business providing natural hoof care for horses. At the conclusion of 2006, it took Mrs. Hanes some time to get the income and expense information together from her business for the preparation of their taxes.

"32.  In 2007, the Respondent told Mr. and Mrs. Hanes that he needed to have income and expense information from 2006 to complete years 2001 through 2005. Mrs. Hanes questioned why the Respondent could not complete the 2001 through 2005 taxes without the 2006 income and expense information.

"33.  Regarding the 2006 and 2007 tax years, it took Mrs. Hanes six months to a year to provide the Respondent with the necessary income and expense information.

"34.  Mrs. Hanes timely provided the Respondent with the necessary income and expense information for tax years 2008 and 2009.

"35.  In February, 2011, Mr. and Mrs. Hanes met with the Respondent. The Respondent informed Mr. and Mrs. Hanes that he had completed their tax returns for 2003 and 2004. The Respondent assured Mr. and Mrs. Hanes that he would complete the remainder of the tax returns by the following day at 5:00 p.m. The Respondent offered to pay Mrs. Hanes $150.00 and provide her with a steak dinner if the tax returns were not completed by the following day at 5:00 p.m. Mrs. Hanes responded, stating that she would pay the Respondent $250.00 and provide him with a steak dinner if the taxes were completed by the following day at 5:00 p.m.

"36.  The next day after 5:00 p.m., Mr. Hanes called the Respondent and the Respondent told Mr. Hanes that he did not complete the tax returns.

"37. The following morning at 8:00 a.m., Mrs. Hanes went to the Respondent's home/office. She was met at the door by the Respondent's son, who indicated that his father was still asleep. Mrs. Hanes informed the Respondent's son that she wished to pick up their file. Mrs. Hanes told the Respondent's son that she would return at 11:00 a.m. to retrieve the file. At 11:00 a.m., Mrs. Hanes returned and picked up the file.

"38. Mr. Hanes took the file to Jerry Saskowski and retained Mr. Saskowski to complete the federal and state income tax returns. Mr. Saskowski completed the returns. However, before the returns were signed and filed, on April 28, 2011, the Kansas Department of Revenue came to Mr. Hanes' home and place of business and seized many items of personal property.

"39. While representatives of the Kansas Department of Revenue remained at Mr. Hanes' property, Mr. Saskowski brought the completed tax returns and Mr. and Mrs. Hanes signed the returns in front of the representatives of the Kansas Department of Revenue. However, the seizure continued. The seizure of their personal property cost Mr. and Mrs. Hanes approximately $10,930.00 in out-of-pocket expenses. Additionally, Mr. and Mrs. Hanes also suffered additional expenses.

"40. The Respondent never explained the meaning of tax levy or tax warrant to Mr. and Mrs. Hanes. Additionally, the Respondent never explained that the IRS or the Kansas Department of Revenue could seize personal property as a result of their failure to timely file and pay their taxes. Finally, the Respondent never explained that if Mr. and Mrs. Hanes were entitled to a refund of withheld taxes for a given year that they would not be able to receive the refund if the return was filed more than three years late.

"41. As a result of the Respondent's lack of diligence, Mr. and Mrs. Hanes lost $11,775.18 in refunds, as follows:

| | |
|---|---|
| 2001 | $1,493.85 |
| 2002 | $3,585.13 |
| 2003 | $985.04 |
| 2004 | $4,179.16 |
| 2005 | $1,532.00 |
| Total | $11,775.18 |

## "KRPC 1.3

"42. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to diligently and promptly represent Mr. and Mrs. Hanes by failing to complete their 2001, 2002, 2003, 2004, 2005, 2008, and 2009 federal and state income tax returns. Because the Respondent failed to act with reasonable diligence and promptness in representing Mr. and Mrs. Hanes, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

## "KRPC 8.4(g)

"43. 'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). Failing, for a period of 10 years, to complete Mr. and Mrs. Hanes' tax returns directly reflects adversely on the Respondent's fitness to practice law. The Hearing Panel concludes that the Respondent violated KRPC 8.4(g).

## "AMERICAN BAR ASSOCIATION
## "STANDARDS FOR IMPOSING LAWYER SANCTIONS

"44. In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"45. *Duty Violated.* The Respondent violated his duty to his clients to diligently represent them. Additionally, the Respondent violated his duty to the legal profession to cooperate in disciplinary investigations.

"46. *Mental State.* The Respondent knowingly violated his duties.

"47. *Injury.* As a result of the Respondent's misconduct, the Respondent caused actual, serious financial injury to his clients. Further, the Respondent's misconduct caused actual injury to the legal profession.

"48. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"49. *A Pattern of Misconduct.* The Respondent has engaged in a pattern of misconduct. For a period of 10 years, the Respondent failed to complete the federal and state income tax returns for Mr. and Mrs. Hanes.

"50. *Multiple Offenses.* The Respondent committed multiple rule violations. The Respondent violated KRPC 1.3, KRPC 1.15, KRPC 8.1, KRPC 8.4, and Kan. Sup. Ct. R. 207. Accordingly, the Hearing Panel concludes that the Respondent committed multiple offenses.

"51. *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process.* The Disciplinary Administrator first requested that the Respondent provide a written explanation regarding the overdrafts on his attorney trust account in June, 2010. The Respondent failed to provide the written explanations until December, 2010.

"52. *Refusal to Acknowledge Wrongful Nature of Conduct.* During the hearing on the formal complaint, the Respondent made many excuses for what happened. However, the Respondent's excuses consisted of placing the blame elsewhere. The Respondent failed to take responsibility for any of his misconduct and refused to acknowledge that he violated the Kansas Rules of Professional Conduct.

The Respondent's failure to acknowledge the wrongful nature of his conduct significantly aggravates the misconduct in this case.

"53.  *Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to practice law in the State of Kansas in 1988. At the time the Respondent's misconduct began in 2001, the Respondent had been practicing law for more than 14 years. Additionally, the Respondent's misconduct spanned a period of 10 years.

"54.  Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstance present:

"55.  *Absence of a Prior Disciplinary Record.* The Respondent has not previously been disciplined.

"56.  In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.22 Suspension is generally appropriate when:

(a)  a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)  a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'7.2  Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"RECOMMENDATION

"57.  The Disciplinary Administrator recommended that the Respondent be suspended from the practice of law for one year. Additionally, the Disciplinary Administrator recommended that, prior to reinstatement, the Respondent be required to undergo a reinstatement hearing pursuant to Kan. Sup. Ct. R. 219.

"58.  The Respondent made no recommendation regarding discipline. The Respondent simply argued that no client funds were in his attorney trust account and that he would not prepare tax returns that were not correct.

"59.  Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended for a period of one year. The Hearing Panel further recommends that prior to reinstatement, the Respondent be required to undergo a hearing pursuant to Kan. Sup. Ct. R. 219.

"60.  Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of fact and conclusions of law of the disciplinary panel,

and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2011 Kan. Ct. R. Annot. 334). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *Lober*, 288 Kan. at 505 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]). When the court assesses the existence of clear and convincing evidence, it refrains from weighing conflicting evidence, assessing witness credibility, or redetermining questions of fact. See *In re B.D.-Y.*, 286 Kan. 686, 699, 187 P.3d 594 (2008).

With this standard of review as our guide, we address in turn each of respondent's exceptions to the hearing panel's final hearing report.

*There is clear and convincing evidence that respondent violated KRPC1.15.*

Respondent argues there is no violation of KRPC 1.15 because he had no client money in his trust account. He therefore suggests his personal funds there could not have been commingled. This is an issue of rule interpretation; therefore, we exercise unlimited review. See *In re Bryan*, 275 Kan. 202, 211, 61 P.3d 641 (2003) ("Interpretation of the Kansas Rules of Professional Conduct is a question of law over which this court has unlimited review."). KRPC 1.15(d)(1) (2011 Kan. Ct. R. Annot. 519) prohibits the placing of personal funds in a client trust account, whether commingled or not. It states:

"(d) Preserving identity of funds and property of a client.

(1) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable accounts maintained in the State of Kansas with a federal or state chartered or licensed financial institution and insured by an agency of the federal or state government, and *no funds belonging to the lawyer or law firm shall be deposited therein. . . ."* (Emphasis added.)

In support of his argument respondent relies on a Georgia rule that similarly states, "No personal funds shall ever be deposited in

a lawyer's trust account . . . ." Georgia Rules of Professional Conduct R. 1.15(II)(b). Respondent argues that the Kansas rules do not contain such a specific proclamation. We disagree. KRPC 1.15(d) states that "no funds belonging to the lawyer or law firm shall be deposited" in a trust account. While there are two exceptions to that rule, neither applies in this case.

There is clear and convincing evidence that respondent kept personal funds in his client trust account. He admits that he used personal funds to pay his continuing legal education (CLE) commission fees, his Kansas attorney registration fees, and fees to the Kansas Bar Association for attending a CLE all out of his trust account. We adopt the panel's conclusion that respondent violated KRPC 1.15.

*There is clear and convincing evidence that respondent violated KRPC 8.1(b) and Supreme Court Rule 207(b).*

KRPC 8.1(b) (2011 Kan. Ct. R. Annot. 609) and Supreme Court Rule 207(b) (2011 Kan. Ct. R. Annot. 314) require an attorney to respond to the Disciplinary Administrator's requests and to comply with the investigations of misconduct. Here, the hearing panel found clear and convincing evidence that respondent did not respond to the Disciplinary Administrator's letters of June, July, August and October of 2010 until December 2010.

Respondent first argues he did not have to comply with these rules because there was no violation of KRPC 1.15. But an attorney's failure to cooperate under KRPC 8.1(b) is not dependent on an underlying violation of KRPC 1.15. The duty to cooperate is a separate independent duty.

Respondent next argues extenuating circumstances existed. He testified at the hearing that at the time of the returned checks he was going through rough financial and personal times. He had been evicted from his office, was unable to obtain some office supplies, and his father had been ill. But respondent admitted that he could have contacted the Disciplinary Administrator by phone or letter and explained his situation without waiting for months to pass. The panel's finding that Collins failed to cooperate is supported by clear and convincing evidence. See *In re Lober*, 276 Kan. 633, 636-37,

78 P.3d 442 (2003). We therefore adopt the panel's conclusion that respondent violated KRPC 8.1(b) and Supreme Court Rule 207(b).

*There is clear and convincing evidence that respondent violated KRPC 1.3 and 8.4(g).*

Respondent next argues that Pete and Paula Hanes were not credible witnesses. He further contends he was unable to timely file their tax returns because the Hanes failed to provided him with the necessary information. But Pete Hanes, Paula Hanes, and Jerry Saskowski all testified that the information the Hanes provided to respondent was acceptable. In addition, Saskowski testified he was able to complete the Hanes' back tax returns based on the information previously provided to Collins. We do not "weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *In re Wiles*, 289 Kan. 201, 203, 210 P.3d 613 (2009).

Respondent also argues that the panel erred in denying his request to admit Exhibit B—the Hanes' 2001 tax return that respondent allegedly prepared. Because the record shows that respondent did not offer Exhibit B into evidence at the hearing, the panel did not err in failing to admit the exhibit.

Finally, respondent contends that Pete and Paula Hanes failed to comply with the subpoena duces tecum. Pete Hanes testified, however, that he did not bring the subpoenaed information because it was not in his possession. And Paula Hanes testified that she brought all available information. Respondent does not explain what subpoenaed information was withheld or how its absence hurt his case other than his conclusory statement that if it had been admitted the complaint would have been dismissed. We adopt the panel's conclusion that respondent violated KRPC 1.3 (2011 Kan. Ct. R. Annot. 433) and 8.4(g) (2011 Kan. Ct. R. Annot. 618).

## SANCTION

After rejecting respondent's exceptions to the panel's final hearing report, we move to the question of appropriate sanction for his violations of KRPC 1.3, 1.15(a) and (d)(1), 8.1(b), 8.4(g), and Supreme Court Rule 207(b).

At the panel hearing, the Disciplinary Administrator advocated for a 1-year suspension from the practice of law. Respondent made no disciplinary recommendation. The panel also recommended a 1-year suspension from the practice of law. Both the Disciplinary Administrator and panel also recommend that before reinstatement, the respondent be required to undergo a hearing under Kan. Sup. Ct. R. 219 (2011 Kan. Ct. R. Annot. 380).

We agree suspension is the appropriate discipline. Over a period of 9 years respondent failed to perform legal services which resulted in his clients suffering an unnecessary and expensive tax seizure. ABA Standards for Imposing Lawyer Sanctions § 4.42 (2003) (stating "Suspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."). We hold a 1-year suspension is the appropriate discipline given the nature of respondent's offenses, as well as the undisputed findings that respondent failed to perform services for his clients and misused his client trust account. In addition, we require a hearing under Supreme Court Rule 219 if respondent wishes to seek reinstatement after the suspension period.

Among the other issues for the reinstatement hearing panel to consider under Supreme Court Rule 219(f), the panel specifically must consider and report to this court its evaluation as to: (1) respondent's medical, physical, and emotional health as it may impact his fitness to return to the practice of law; (2) if reinstatement is recommended, whether respondent's practice should be monitored by another attorney; and (3) if monitoring is recommended, any appropriate terms and conditions, including the time period for monitoring.

IT IS THEREFORE ORDERED that respondent Craig E. Collins be suspended from the practice of law in the state of Kansas for a period of 1 year, beginning on the date of filing this opinion.

IT IS FURTHER ORDERED that before reinstatement, the respondent be required to comply with Supreme Court Rule 218

(2011 Kan. Ct. R. Annot. 379) and undergo a hearing pursuant to Supreme Court Rule 219 (2011 Kan. Ct. R. Annot. 380).

IT IS FURTHER ORDERED that the costs of this proceeding shall be assessed to the respondent and that this opinion be published in the official Kansas Reports.