STATE OF NEBRASKA, APPELLEE, v. GALE E. METTENBRINK,
APPELLANT.

520 N.W.2d 780

Filed August 16, 1994.   No. A-93-1114.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Don Stenberg, Attorney General, J. Kirk Brown, Kimberly A. Klein, and, on brief, Donald A. Kohtz for appellee.

IRWIN, MILLER-LERMAN, and MUES, Judges.

MILLER-LERMAN, Judge.

Gale E. Mettenbrink was convicted of three counts of attempted false application for vehicle title. He appeals the portion of the sentence of the Hall County District Court ordering restitution and the court's order denying his request to proceed in forma pauperis after sentencing. For the reasons recited below, we affirm in part, in part reverse, and remand the cause for resentencing.

## FACTS

Mettenbrink and a dentist, Les Bowden, had financial dealings at least since 1990. Mettenbrink's rental car franchise was not profitable, and Mettenbrink approached Bowden seeking funds to purchase additional vehicles to rent or sell. Bowden advanced money to Mettenbrink.

In January 1992, Bowden advanced funds to Mettenbrink to purchase certain vehicles at auction. Mettenbrink purchased four vehicles with Bowden's funds: a 1988 Dodge Aries, for which Bowden paid $2,915; a 1986 Jeep Comanche pickup, for which Bowden paid $2,990; a 1988 Mazda B2200 pickup, for which Bowden paid $2,385; and a 1988 Chevrolet Celebrity, for which Bowden paid $2,365. Checks written by Bowden

evidencing the foregoing transactions were received into evidence at the restitution hearing. Bowden received the titles to these four vehicles.

On February 11, 1992, Mettenbrink obtained duplicate titles to the four vehicles at the Hall County treasurer's office. Mettenbrink claimed he needed new titles because he had mistakenly thrown away the originals.

Periodically, Bowden drove by the auto sales lot where the four vehicles were placed for sale. Bowden noticed the vehicles were missing and inquired of Mettenbrink as to their whereabouts. Mettenbrink explained variously that the vehicles had been moved to other sales lots or rented. After Bowden complained to Mettenbrink that he had not received payments occasioned by rentals, Mettenbrink paid Bowden $800. After another lapse in payments, Bowden learned from Mettenbrink's father that the Jeep and Dodge had been sold. Bowden received $5,600 in payments for the sold vehicles. At some point, Bowden learned from the Hall County treasurer's office that Mettenbrink had obtained duplicate titles to the four vehicles.

In September 1992, Mettenbrink and his wife filed a chapter 7 bankruptcy proceeding under 11 U.S.C. §§ 701 through 766 (1988). Bowden was listed as a schedule F creditor holding an unsecured nonpriority claim in the unliquidated amount of $53,500. On January 11, 1993, the U.S. Bankruptcy Court filed an order discharging the debtor of dischargeable debts. Notice was sent to Bowden.

Mettenbrink was thereafter charged in district court with four counts of false application for vehicle title, to which he pled not guilty. Following plea negotiations, he pled no contest on September 3, 1993, to an amended information charging him with three counts of attempted false application for vehicle title, violations of Neb. Rev. Stat. §§ 28-201(1)(b) (Reissue 1989) and 60-116 (Reissue 1988).

Following the preparation of a presentence investigation report and a restitution hearing, Mettenbrink was sentenced to 30 days in jail on each count, sentences to be served concurrently, and ordered to pay $5,055 in restitution. No payment schedule or time limit was placed on the restitution

order. After sentencing, Mettenbrink filed a motion to proceed in forma pauperis and an affidavit of poverty. The district court denied the motion to proceed in forma pauperis. This appeal followed.

## ANALYSIS

### RESTITUTION FOLLOWING BANKRUPTCY

Mettenbrink argues on appeal that for a variety of reasons, restitution was improperly ordered following the discharge of his debts in bankruptcy. Mettenbrink attacks the fact of restitution and does not quarrel with the amount. The State contends generally that pursuant to *Kelly v. Robinson*, 479 U.S. 36, 107 S. Ct. 353, 93 L. Ed. 2d 216 (1986), a restitution order is not dischargeable in bankruptcy. The parties agree that the issue of the dischargeability of a restitution order is one of first impression in Nebraska.

In *Kelly v. Robinson*, the defendant had been ordered in 1980 to pay restitution to the State of Connecticut as a result of her conviction of welfare fraud. In 1981, she filed a chapter 7 bankruptcy proceeding and listed the restitution order as a debt. The bankruptcy court cited 11 U.S.C. § 523(a)(7) (1982), which provided that a debt is not dischargeable if the debt "is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss," and concluded that the restitution order was not dischargeable in bankruptcy. *In re Robinson*, 45 B.R. 423 (Bankr. D. Conn. 1984).

The U.S. Court of Appeals for the Second Circuit reversed the bankruptcy court's decision. See *In re Robinson*, 776 F.2d 30 (1985). In its reversal, the Second Circuit relied in part on the language of the Connecticut statute, which provided that restitution could be assessed "for the loss or damage caused [by the crime]," Conn. Gen. Stat. Ann. § 53a-30(a)(4) (West 1985), and concluded that the debt was, in effect, compensation to the victim, as distinguished from a governmental unit, for "actual pecuniary loss" and, therefore, was not excluded from discharge under § 523(a)(7).

The U.S. Supreme Court reversed the Second Circuit's decision. See *Kelly v. Robinson, supra*. The Court stated that

criminal proceedings involve the penal and rehabilitative interests of the State, and restitution orders imposed in criminal proceedings operate for the benefit of the State and are not assessed for compensation to the victim.

In holding that a restitution order was not dischargeable in bankruptcy, the Court noted as follows:

> The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant. As the Bankruptcy Judge who decided this case noted in *Pellegrino:* "Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose."
> 42 B. R., at 133.

479 U.S. at 52-53.

■■■ Mettenbrink argues that the instant case is distinguishable from *Kelly v. Robinson* because the restitution order against him was entered after the conclusion of his bankruptcy proceedings. Mettenbrink claims, in effect, that the restitution order is an improper reinstatement of a civil debt which was previously discharged in bankruptcy. Mettenbrink misperceives the nature of a restitution order. A restitution order is part of a criminal sentence. *State v. War Bonnett*, 229 Neb. 681, 428 N.W.2d 508 (1988). It does not create a "debt" between the defendant and the victim and is not a dischargeable civil debt. *People v. Mosesson*, 78 Misc. 2d 217, 356 N.Y.S.2d 483 (1974), cited with approval in *Kelly v. Robinson, supra.* The fact that the restitution order in this case followed

Mettenbrink's discharge order does not alter its character or render it discharged or dischargeable. See *State v. West*, 173 Ariz. 602, 845 P.2d 1097 (Ariz. App. 1992) (holding that a restitution order following bankruptcy discharge was proper). Indeed, to be dischargeable in bankruptcy under 11 U.S.C. § 727(b), a debt must be in existence at the time of the bankruptcy. In the instant case, the restitution order was not in existence during Mettenbrink's bankruptcy proceedings.

Based on our reading of *Kelly v. Robinson*, state jurisprudence, and the relevant bankruptcy code provisions, we conclude that ordering restitution was proper. Given Mettenbrink's earning capacity, his current weakened financial condition does not preclude a restitution order. See *State v. Yost*, 235 Neb. 325, 455 N.W.2d 162 (1990). See, also, *U.S. v. Rogat*, 924 F.2d 983 (10th Cir. 1991). However, we note that two plain errors were committed by the court in the restitution order. See *State v. Wilcox*, 239 Neb. 882, 479 N.W.2d 134 (1992) (holding that plain error could be found on appeal regarding sentencing when the error is plainly evident in the record and prejudicially affects a substantial right of the litigant, causes a miscarriage of justice, or damages the integrity of the judicial process).

■ Regarding the first error, Nebraska case law restricts the amount of restitution to the loss sustained by the victim resulting from the offense for which the defendant is convicted. *State v. Kelly*, 235 Neb. 997, 458 N.W.2d 255 (1990). In the case at bar, Mettenbrink was convicted of three counts of attempted false application for vehicle title. It is apparent from the amount of restitution ordered that the court used all four counts with which Mettenbrink was originally charged in determining the amount of restitution. Mettenbrink can be ordered to pay restitution for only the losses sustained by the victim from the three offenses for which he was convicted. This is plain error.

■ Regarding the second error, in imposing a sentence, the court must state the precise terms of the sentence. *State v. Salyers*, 239 Neb. 1002, 480 N.W.2d 173 (1992). The requirement of certainty and precision applies to criminal sentences containing restitution orders. *State v. McGinnis*, 2

Neb. App. 77, 507 N.W.2d 46 (1993). In the case at bar, the court failed to inform Mettenbrink as to whether the restitution must be made (1) immediately, (2) in specified installments, or (3) within a specified period of time, not to exceed 5 years. See Neb. Rev. Stat. § 29-2281 (Cum. Supp. 1992). This lack of definiteness is plain error.

### DENIAL OF MOTION TO PROCEED IN FORMA PAUPERIS

Mettenbrink claims that the trial judge erred in denying his application to proceed in forma pauperis after sentencing and in concluding that the appeal was not taken in good faith. The State argues that the trial judge's denial of the motion was not an abuse of discretion. We agree with the State.

The Nebraska Supreme Court has stated that a trial judge is granted discretion in ruling on a motion to proceed in forma pauperis, and the decision "will not be disturbed on appeal unless it amounts to an abuse of discretion." *State v. Eberhardt*, 179 Neb. 843, 848, 140 N.W.2d 802, 805 (1966). The record shows that although Mettenbrink has come through a financially extreme period, he is now left with few debts. His obligation to the Internal Revenue Service is payable at the rate of $121 per month. In addition, he has assets consisting of a car valued at $3,000, furniture valued at $1,500, a television valued at $200, a stereo valued at $25, appliances valued at $200, and miscellaneous personal property valued at $500. He has $1,000 in a checking account. At the sentencing hearing, Mettenbrink's attorney admitted that Mettenbrink is employed. Mettenbrink's wife earns approximately $20,000 per year. We note that on appeal, Mettenbrink is represented by the Hall County public defender and observe that his appeal has apparently thus proceeded without his incurring attorney fees. In view of the record, we conclude that the trial court did not abuse its discretion in denying Mettenbrink's motion to proceed in forma pauperis after sentencing.

### CONCLUSION

For the reasons recited above, we remand the cause for resentencing regarding the restitution portion of the sentence, and otherwise affirm the convictions and sentences.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR RESENTENCING.