**IN THE MATTER OF THE SUSPENSION OF MICHAEL A. JOSEPH, ESQUIRE, AS A MEMBER OF THE VIRGIN ISLANDS BAR**

S. Ct. Civil No. 2012-0119

Supreme Court of the Virgin Islands

February 11, 2014

542

SAMUEL T. GREY, ESQ., St. Croix, USVI, *Attorney for Petitioner V.I. Ethics & Grievance Committee.*

RONALD E. RUSSELL, ESQ., St. Croix, USVI, *Attorney for Respondent.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and HODGE, *Designated Justice.*[1]

## OPINION OF THE COURT

(February 11, 2014)

PER CURIAM. This matter comes before the Court pursuant to a consolidated petition for disciplinary action filed by the Ethics and Grievance Committee of the Virgin Islands Bar Association ("EGC"), which requests that this Court, among other remedies, suspend Michael A. Joseph, Esq. from the practice of law for 56 months as a sanction for misconduct in numerous matters. For the reasons that follow, we grant the petition, as modified, and impose a sanction of one year of probation.

## I. BACKGROUND

The consolidated petition arises from multiple distinct grievances filed against Joseph, all investigated and adjudicated separately. The first grievance, filed by Wayne Charles, alleged that Joseph had been retained to file a motion in the District Court, pursuant to 28 U.S.C. § 2255, to collaterally attack a federal conviction. According to Charles, an individual employed by the National Legal Professional Associates — a consulting firm located in Cincinnati, Ohio — faxed a complete version of a motion to Joseph on April 21, 1997, with the expectation that Joseph would file the motion on the very same day. Joseph, however, did not file the motion until April 30, 1997 — after the deadline — but represented to him that the late filing could be excused. When the District Court summarily dismissed the motion as untimely, Joseph filed a motion for reconsideration of that ruling, which the District Court denied. When Joseph failed to respond to the grievance, the EGC considered the grievance without a hearing, and issued a decision recommending that

---

[1] Associate Justice Maria M. Cabret has recused herself from this matter. The Honorable Verne A. Hodge, a retired Superior Court Presiding Judge, sits in her place by designation pursuant to section 24(a) of title 4 of the Virgin Islands Code.

this Court suspend Joseph for eight months and order payment of $4,000 in restitution.

The second grievance also relates to proceedings that occurred in the District Court. According to the grievant — Juan Moto — Joseph had been paid $60,000 to defend him in a federal criminal prosecution. Ultimately, Moto pled guilty, and although sentenced in accordance with the plea agreement, told Joseph that he wished to appeal. In his grievance, Moto alleged that Joseph did not file the notice of appeal, and also failed to return his client file or to account for $45,000 of the $60,000 fee. When Joseph failed to respond to the grievance, the EGC issued a disposition recommending a one year suspension.

The third grievance, filed by Allan Petersen on January 6, 2008, also involves a federal case. After being convicted in the District Court, Petersen's parents retained Joseph on March 15, 1996, to appeal his conviction to the Third Circuit. However, on August 30, 1996, Joseph was appointed as his attorney. According to Petersen's grievance, Joseph failed to file a brief and appendix and, after the Third Circuit issued a show cause order on March 14, 1997, Joseph misrepresented to that court that Petersen wished to voluntarily dismiss his appeal, with a motion for voluntary dismissal. Additionally, Petersen alleges that Joseph solicited funds from his family on October 6, 1996, despite being court-appointed. Again, Joseph failed to respond to the grievance, and the EGC issued a disposition recommending a one year suspension followed by three years of probation, as well as payment of $6,000 in restitution and completion of fourteen hours of continuing legal education ("CLE").

Similarly, the fourth grievant, Carl Simon, alleged in his December 30, 2011 grievance that he paid Joseph $10,000 to appeal a murder conviction from the Superior Court to the Appellate Division of the District Court in 1996, but when that appeal was unsuccessful, Joseph, in a September 10, 1997 letter, refused to abide by his request to file a second appeal with the Third Circuit. Yet again, the EGC proceeded on a default basis due to Joseph's failure to respond, and recommends a three month suspension followed by twelve months of supervised probation, as well as completion of ten hours of CLE credits and payment of $951.25 in costs.

Unlike the others, the fifth grievance stems from proceedings in the Superior Court. The grievant, Neville Potter, alleged that his family agreed to pay Joseph a flat $15,000 fee to represent him in a criminal prosecution, of which $12,000 was paid before the representation

terminated. According to Potter, Joseph failed to file any motions in this case — despite promising to file a motion to suppress evidence — and generally acted in a dilatory manner. When Joseph failed to respond to the grievance or appear at a scheduled hearing, the EGC proceeded on a default basis, and recommends that this Court impose a one year suspension and order payment of $12,000 in restitution and $240.75 in costs.

The final two matters relate primarily to conduct that occurred in proceedings before the EGC itself. The sixth grievance, filed by Ezekiel Daniel Sr., alleged that Joseph was paid $14,000 to represent Daniel's son in a criminal case, but that Joseph failed to appear at a scheduling court hearing and failed to communicate with either him or his son. The grievance also alleged that Joseph repeatedly threatened Daniel and used abusive language, and that Joseph failed to account for his fees or issue a refund after Daniel's son terminated the representation. Although the EGC initially proceeded on a summary basis after Joseph failed to timely respond to the grievance, it granted Joseph's request to hold a hearing. Joseph appeared at the hearing, and the EGC ultimately concluded that Daniel's claims were not supported by clear and convincing evidence; nevertheless, the EGC found that Joseph violated Model Rule of Professional Conduct 8.1(b) due to his failure to file a timely response, and recommends a six month suspension as a sanction for this misconduct.

The final matter was initiated by the EGC itself. On December 2, 2011, the EGC publicly reprimanded Joseph for violating Model Rules 1.1, 1.4, 1.5, and 8.1 in connection with his representation of Johnny Martinez, and ordered him to pay $5,000 in restitution. When the Office of Disciplinary Counsel contacted him on January 10, 2012, to arrange for payment, Joseph failed to respond. When several follow-up attempts by Disciplinary Counsel were unsuccessful, the EGC initiated a new disciplinary proceeding, alleging that Joseph's failure to pay restitution to Martinez violated Model Rule 3.4(c). As a result of Joseph's failure to respond, the EGC also charged him with violating Model Rule 8.1(b), proceeded on a default basis, and issued a disposition recommending a three month suspension.

The EGC filed its consolidated petition for disciplinary action with this Court on July 11, 2013.[2] This Court issued a briefing schedule on July 25, 2013, and Joseph filed an answer on August 27, 2013. Since the time for the EGC and Disciplinary Counsel to respond to Joseph's answer has lapsed, this matter is now ripe for decision.

## II. JURISDICTION

"This Court, as the highest court of the Virgin Islands, possesses both the statutory and inherent authority to regulate the practice of law in the Virgin Islands." *In re Gonzalez*, 59 V.I. 862, 864-65 (V.I. 2013) (citing 4 V.I.C. § 32(e)).[3] This authority encompasses the power to discipline attorneys for ethical misconduct. *In re Suspension of Adams*, 58 V.I. 356, 361 (V.I. 2013). Like all other courts vested with authority to regulate their local bars, this Court, with the assistance of the EGC, exercises universal disciplinary jurisdiction over the attorneys admitted to practice before us, regardless of where the underlying misconduct may have occurred. *See* V.I.S.CT.R. 207.1.2(b)(1); MODEL RULES PROF'L CONDUCT R. 8.5(a) ("A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs.").

■ We recognize that, unlike the other disciplinary cases considered by this Court, the majority of the grievances against Joseph stem from proceedings that occurred in the District Court of the Virgin Islands. It is well established that "state courts may not regulate the practice of law in federal courts," including federal courts physically located in the state. *In re Admission of Alvis*, 54 V.I. 408, 414 (V.I. 2010) (citing *Cowen v. Calabrese*, 230 Cal. App. 2d 870, 41 Cal.Rptr. 441, 443 (1964)); *see also*

---

[2] In its petition, the EGC also requests that this Court review an eighth matter, involving a grievance filed by Isidoro Felix, in which it recommended a private reprimand. Since the EGC may impose a private reprimand without court approval, *see* V.I.S.CT.R. 207.4.3(b)(I)(1), and because Joseph did not timely appeal that disposition to this Court, *see* V.I.S.CT.R. 207.4.11(b), we decline to consider the EGC's request for us to approve of this sanction.

[3] After 1991, but prior to establishment of the Supreme Court in 2007, the Superior Court, as the highest non-federal local court of the Virgin Islands, governed all matters related to the Virgin Islands Bar. *See Application of Moorhead*, 27 V.I. 74, 93 (V.I. Super. Ct. 1992). This Court assumed jurisdiction over bar governance matters in 2007. *See Application of Coggin*, 49 V.I. 432, 436 (V.I. 2008).

550

*Brown v. Smith*, 222 F.3d 618, 620 (9th Cir. 2000) ("Admission to practice law before a state's courts and admission to practice before the federal courts in that state are separate, independent privileges."). Thus, "this Court and the District Court," as well as the Third Circuit, "each possess the authority to regulate our respective bars." *Alvis*, 54 V.I. at 414.

Although this Court has established the EGC to assist us with attorney discipline matters, and promulgated Supreme Court Rule 207 to govern proceedings before the EGC, the Third Circuit and the District Court have established their own disciplinary procedures. The Third Circuit has adopted its own Rules of Attorney Disciplinary Enforcement, last amended on June 7, 2010, and created a Standing Committee on Attorney Discipline to consider matters that may warrant suspension or disbarment in conjunction with misconduct that occurred in the Third Circuit. On at least one occasion, the Third Circuit suspended a Virgin Islands attorney from the Third Circuit Bar pursuant to these provisions for misconduct that occurred in a Third Circuit case, with this Court then imposing reciprocal discipline after the Third Circuit's sanction became final. *In re Suspension of McIntosh*, S. Ct. Civ. Nos. 2012-0013, 0025, 2013 V.I. Supreme LEXIS 11, *1 (V.I. Mar. 14, 2013) (unpublished). Likewise, the District Court has adopted a comprehensive disciplinary framework, *see* LRCi 83.2, and while it has not notified this Court of any recent discipline, we note that the District Court has, in fact, invoked District Court Local Rule 83.2 to suspend or disbar attorneys from the District Court Bar as a sanction for misconduct that occurred in a District Court proceeding. *See, e.g., Sprauve v. Mastromonico*, 86 F.Supp.2d 519, 530, 41 V.I. 403 (D.V.I. 1999); *Harthman v. Texaco Inc.*, 166 F.R.D. 331, 340-41, 34 V.I. 300 (D.V.I. 1996), *rev'd, In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 377-85, 37 V.I. 398 (3d Cir. 1997).

█ Nevertheless, the EGC and this Court both possess jurisdiction to adjudicate the grievances in the first instance, notwithstanding the fact that the purported misconduct occurred exclusively in federal courts. First, we note that the Third Circuit requires membership in a state bar as a condition to practice, while the District Court mandates membership in the Virgin Islands Bar specifically. *See* LRCi 83.1(b)(1) ("Any attorney who is a member in good standing of the Virgin Islands Bar may by verified application and on motion . . . be admitted as a member of the bar of the Court."); FED. R. APP. PROC. 46 ("An attorney is eligible for admission to the bar of a court of appeals if that attorney . . . is admitted

to practice before . . . the highest court of a state."). As a result, this Court possesses jurisdiction to discipline members of the Virgin Islands Bar for conduct that occurred before those tribunals. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 945-46 (9th Cir. 2004) (state bar may discipline attorney for misconduct in federal immigration proceedings because practice before Board of Immigration Appeals limited to attorneys who are members in good standing of a state bar); *Kroll v. Finnerty*, 242 F.3d 1359, 1364-65 (Fed. Cir. 2001) (state court may discipline attorney practicing patent law, despite fact that patent law is an exclusively federal field of law); *Statewide Grievance Committee v. Gifford*, 76 Conn. App. 454, 820 A.2d 309, 314 & n.8 (2003) (state court may discipline attorney for conduct that occurred in federal court because "[t]he state is the primary jurisdiction that sponsors a lawyer and is the governmental entity that primarily presents a lawyer to the public . . . .") (citing *In re Sawyer*, 260 F.2d 189, 201 (9th Cir. 1958)); *In re Dennis*, 286 Kan. 708, 188 P.3d 1, 14 (2008) (rejecting argument that state court lacked jurisdiction to discipline attorney for misconduct in federal court). Accordingly, all of the EGC's grievances are properly before this Court.

## III. DISCUSSION

██ Having concluded that we possess jurisdiction to consider all of the grievances, we now review each panel decision on the merits. As we have previously explained:

> The disciplinary procedures adopted by the Court require the Bàr's Ethics and Grievance Committee to obtain an order from this Court to [suspend or] disbar an attorney from the practice of law in the Virgin Islands. In reviewing the record in this case and the Memorandum of Decision entered by the Bar's adjudicatory panel, we exercise independent judgment with respect to both findings of fact and conclusions of law on all issues, including the sanction recommended by the Bar. Under our independent review, we carefully consider the adjudicatory panel's analysis, but must separately determine, like the adjudicatory panel, whether there is clear and convincing evidence that the respondent violated the Model Rules of Professional Conduct. Our review in this respect is virtually *de novo*, except we do not hear and consider anew live testimony. If we find that the respondent has violated the rules, we must also decide whether to adopt the panel's recommended discipline or whether some other type of discipline is warranted.

*V.I. Bar v. Brusch*, 49 V.I. 409, 411-12 (V.I. 2008) (footnotes and citations omitted). However, "the failure to timely answer a grievance shall be deemed an admission by the Respondent to all factual allegations contained in the grievance, and shall permit the grievance to proceed on a default basis." *In re Suspension of Parson*, 58 V.I. 208, 215 (V.I. 2013). In such a case, we review the EGC's decision only "to independently determine whether the panel correctly held that these facts constituted ethical violations." *In re Suspension of Joseph*, 56 V.I. 490, 499 (V.I. 2012). Since, as we explain in further detail below, Joseph violated Model Rule 8.1(b) with respect to each grievance, we address each grievance in turn without considering any of the new arguments Joseph asserts for the first time in his August 27, 2013 answer.

## A. Wayne Charles

██ In its disposition, the EGC concluded that Joseph violated Model Rules 1.3, 1.5(a), and 8.1(b) with respect to his representation of Charles. We agree that Joseph violated Model Rule 8.1(b) through his failure to file an answer, and therefore assume the truth of all the factual allegations against him. *See In re Joseph*, 56 V.I. at 499. However, accepting all the factual assertions in the grievance as true — as we must in light of his default — we cannot conclude that Joseph violated Model Rules 1.3 and 1.5(a).

 In his grievance, Charles noted that he retained Joseph for the purposes of filing a 28 U.S.C. § 2255 motion, and that on April 21, 1997, a "consulting" firm that Charles had also hired faxed Joseph a drafted motion that it expected him to file with the District Court on the very same day, which Joseph failed to do. Essentially, Charles admits to hiring Joseph with the expectation that he would simply sign his name to and file a motion wholly researched and drafted by an individual employed by the "consulting" firm, who is likely not a member of Virgin Islands Bar and may not even be licensed to practice law in any jurisdiction. In other words, the EGC essentially found that Joseph violated Model Rule 1.3 — diligence — because he did not sign a motion drafted by another individual, who potentially may have been a non-lawyer,[4] and file the

---

[4] In the answer he filed with this Court, Joseph states that the April 21, 1997 document had been drafted by a disbarred lawyer, and that he refused to sign and file the document upon

document with the District Court on the same day it was faxed to him. Since filing the "ghostwritten" motion, especially without taking the time to review its legal sufficiency, would itself have violated the prohibition on aiding and abetting unauthorized practice of law, *see* 4 V.I.C. § 443(a), we cannot conclude that Joseph's failure to file the document violated Model Rule 1.3.[5]

■ We also disagree with the EGC that Joseph violated Model Rule 1.5(a), which prohibits charging an unreasonable fee. In its decision, the EGC concluded that Charles was entitled to a $4,000 refund simply because Joseph failed to file the § 2255 motion on April 21, 1997. But as explained above, it appears that Charles retained Joseph with the expectation that he would simply file a "ghostwritten" motion drafted by the "consulting" firm, and that his dissatisfaction stems solely from the fact that Joseph did not aid and abet in what would have amounted to the unauthorized practice of law. While the taking of the $4,000 fee could potentially constitute a Model Rule 1.5(a) violation had Joseph simply retained the money, the record reflects that Joseph did provide legal services to his client, in that Charles states, in his own grievance, that Joseph eventually filed a § 2255 motion and, when it was denied,

---

discovering this fact. Since Joseph failed to file an answer during the EGC proceedings, and is thus in default with respect to all of the factual allegations against him, we decline to consider any of the new factual claims raised for the first time in the proceedings before this Court.

[5] We recognize, of course, that it is possible that Joseph was not concerned by the fact that a non-lawyer may have drafted the proposed April 21, 1997 motion, and that he simply did not file it out of laziness, neglect, or some other reason. But as we have previously emphasized, both the EGC and this Court must determine whether the evidence introduced against a respondent establishes an ethical violation by clear and convincing evidence, a standard which "requires evidence sufficient to 'enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue.' " *In re Suspension of Welcome*, 60 V.I. 242, 250 (V.I. 2013) (quoting *In re Campbell*, 59 V.I. 701, 716 (V.I. 2013)). Importantly, the fact that a respondent is in default as a result of violating Model Rule 8.1(b) only requires that we accept the factual allegations against the respondent as true; it does not require the acceptance of naked speculation or legal conclusions couched in the form of factual allegations. *In re Disbarment of McLaughlin*, 60 V.I. 230, 239 (V.I. 2013) (citing *Joseph v. Bureau of Corrections*, 54 V.I. 644, 649-50 (V.I. 2011)). Since neither the factual allegations in Charles's grievance, nor any other evidence in the record, even if accepted as true, establishes that Joseph had assented to being hired for the sole purpose of signing his name to a "ghostwritten" filing, we decline to infer that Joseph had been aware of the scheme.

attempted to persuade the District Court to reopen the matter.[6] And while Charles alleges that Joseph failed to ever explain the untimely filing to the District Court, it is not clear how Joseph could possibly have explained the untimely filing without either outright lying to the District Court — itself an exceptionally serious ethical violation — or informing the District Court that the delay had been due to Charles attempting to facilitate the unauthorized practice of law, which would almost certainly have also adversely affected his attempts to have the untimely filing accepted. Consequently, we cannot conclude that the $4,000 fee Joseph charged Charles was unreasonable under the circumstances.

## B. Juan Moto

In the Moto matter, the EGC found that Joseph violated Model Rules 1.3, 1.4(a), and 8.1(b). Again, we agree with the EGC that Joseph violated Model Rule 8.1(b), given his complete failure to file an answer or otherwise participate in the disciplinary proceedings. Nevertheless, we conclude that Joseph did not violate Model Rules 1.3 or 1.4(a). The grievance, as supplemented by court documents, established that on November 17, 2000, Moto retained Joseph to defend him in a criminal case tried before the District Court, pled guilty on March 11, 2002, and was sentenced on June 11, 2003. Although Moto manifested an intent to appeal, Joseph did not file a notice of appeal on his behalf; the court documents, however, reflect that Moto had retained a different attorney on March 12, 2003, to assist him with a possible appeal. Nevertheless, in his grievance, Moto stated that Joseph was responsible for filing an appeal, and also alleged that Joseph never returned his client file and failed to respond to several requests for an accounting.

In its decision, the EGC found that Joseph violated Model Rule 1.3 — diligence — by failing to file a notice of appeal after the June 11, 2003 sentencing hearing. We disagree. Unquestionably, an attorney in a criminal case must file a notice of appeal when asked to do so by his

---

[6] Because the pertinent District Court motions and orders were not provided to this Court by the EGC, and the documents predate the adoption of mandatory electronic filing in the District Court, we have not been able to independently verify whether the claims in Charles's grievance are correct. However, since the representations in Charles's grievance, even if accepted as true, would not establish an ethical violation, we need not formally request copies of these documents from the Clerk of the District Court.

client. *See, e.g., United States v. Chavez*, 271 Fed. Appx. 391, 391 (5th Cir. 2008) ("The failure to file a requested notice of appeal is *per se* ineffective assistance of counsel, even without a showing that the appeal would have merit.") (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 483-86, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)). However, as the panel recognized in a footnote to its decision, Moto expressly stated, at the June 11, 2003 sentencing hearing, that he "ha[s] another person representing me in Puerto Rico that I would like, if [the Court] would consider it, in this sentencing," (June 11, 2003 Hr'g Tr. 9), and, more significantly, filed a petition for writ of habeas corpus — which he included with his grievance — that established that he actually retained a lawyer in Puerto Rico to assist him with the appeal on March 12, 2003 — a full three months before the June 11, 2003 sentencing. In light of this information, we cannot say, "without hesitancy," that Joseph — and not the Puerto Rican attorney[7] — was responsible for perfecting the appeal. *In re Campbell*, 59 V.I. 701, 716 (V.I. 2013).

██ ██ The panel also concluded that Joseph violated Model Rule 1.4(a) on two distinct occasions. First, the panel held that, even though Moto was not entitled to an accounting pursuant to Model Rule 1.15(d) because the $60,000 fee he paid Joseph had been a flat fee for the entirety of the representation, Joseph nevertheless violated Model Rule 1.4(a) because Moto's request for information on how the full $60,000 had been spent "was without question a reasonable request for information." (Moto Dec. 4.) We disagree. A "flat fee" encompasses "all work to be done, whether it be relatively simple and of short duration, or complex and protracted." Alec Rothrock, *The Forgotten Flat Fee: Whose Money Is It And Where Should It Be Deposited?* 1 FLA. COASTAL L.J. 293, 299 (1999). Although jurisdictions differ as to when a flat fee is earned and how attorneys should account for a flat fee over the course of the representation, *see In re Kendall*, 804 N.E.2d 1152, 1157-58 (Ind. 2004) (collecting cases), even the most stringent jurisdiction provides that a flat fee "is earned when the services are *completed . . . .*" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Piazza*, 756 N.W.2d 690, 697 (Iowa 2008) (citations omitted). Consequently, no formal accounting is necessary

---

[7] Because the question is not relevant to our disposition, we do not decide the issue of whether an attorney apparently barred only in Puerto Rico could have filed a notice of appeal on Moto's behalf without first attaining *pro hac vice* admission.

when, as here, the underlying service — defending a criminal defendant in a criminal prosecution — has been completed. Since Moto was not entitled to an accounting of how Joseph earned or spent the $60,000 flat fee after sentencing concluded, his request for such an accounting was not a reasonable request for information, and Joseph's failure to respond — while certainly not the best business practice — did not rise to the level of a violation of Model Rule 1.4(a).

██ The panel found that Joseph separately violated Model Rule 1.4(a) by failing to turn over Moto's client file years later, when Moto decided to challenge his guilty plea through a petition for writ of habeas corpus. However, Model Rule 1.4, by its own terms, codifies a duty to current clients, rather than former clients. Although we agree with the panel that a client file is property of the client, and not the lawyer, this requirement is set forth in Model Rule 1.16(d), which governs the return of papers and other property to former clients upon termination of representation. Importantly, the panel expressly concluded that Joseph did *not* violate Model Rule 1.16(d). While we are not bound by the panel's factual findings or legal conclusion, in the absence of a notice of exceptions or any reasoned argument against the panel decision filed by Disciplinary Counsel — who this Court, in its July 25, 2013 Order, expressly authorized to file a brief separate and apart from the EGC, yet did not do so — we decline to overturn the EGC's decision. *Cf. People v. Ward*, 55 V.I. 829, 840 (V.I. 2011) ("[T]he People, in its brief, does not challenge the . . . decision to order a [new] trial . . . but requests, as the sole remedy, that this Court reverse the portions of the [decisions] that preclude [certain witnesses] from testifying at that trial. . . . [T]he People's decision to expressly seek a lesser form of relief represents a waiver of that right."). Accordingly, we find only that Joseph violated Model Rule 8.1(b).

### C. Allan Peterson and Carl Simon

As to the Petersen grievance, the EGC concluded that Joseph violated Model Rules 1.1, 1.2(a), 1.3, 1.4(a), 1.16(d), 3.3(a), 8.1(b), 8.4(a), 8.4(b), 8.4(c), and 8.4(d). Similarly, the panel considering the Simon grievance concluded that Joseph violated Model Rules 1.1, 1.2, 1.3, 1.16, and 8.1(b).

We agree that Joseph violated Model Rule 8.1(b) with respect to both grievances, since he failed to file an answer despite being directed to, and

therefore enabled the EGC to proceed on a default basis. *Joseph*, 56 V.I. at 499. However, we decline to determine whether Joseph violated any other ethical rules. As noted above, the events outlined in the Petersen and Simon grievances both occurred in 1996 and 1997; however, Petersen did not file his grievance with the EGC until January 6, 2008, while Simon waited until December 30, 2011, to file his grievance.

As we have previously emphasized, "[t]he failure of any Adjudicatory Panel . . . to adjudicate any grievance within twelve (12) months, shall not be grounds for dismissal, mitigation of sanctions, or any other relief to any Respondent." *In re Suspension of Rogers*, S. Ct. Civ. No. 2012-0059, 2012 V.I. Supreme LEXIS 79, at *18 (V.I. Oct. 26, 2012) (unpublished) (quoting V.I.S.CT.R. 207.7.7(c)). However, unlike *Rogers*, the delays in adjudicating the Petersen and Simon grievances were not due to the EGC failing to process the matters in a timely manner; rather, the delay is exclusively a result of Petersen and Simon each waiting literally more than a decade to file a grievance against Joseph. We recognize, of course, that we have promulgated Supreme Court Rule 207.1.14, which provides that "[t]he various statutes of limitations shall not apply to grievances filed with the V.I. Bar Association." V.I.S.CT.R. 207.1.14. Supreme Court Rule 207.1.14, however, was adopted by this Court on November 27, 2007, and during the mid-1990s — when the alleged misconduct occurred — former Superior Court Rule 303 governed attorney discipline proceedings. Significantly, former Superior Court Rule 303 does not contain a provision similar to Supreme Court Rule 207.1.14. Since the EGC would arguably have faced no procedural bar to simply dismissing the Simon and Petersen grievances had they been filed in 2006 — when Superior Court Rule 303 represented the applicable legal authority — we question whether the promulgation of Supreme Court Rule 207.1.14 in 2007 permits Simon and Petersen to file grievances that may otherwise be barred.

Nevertheless, even if Supreme Court Rule 207.1.14 were to have retroactive effect, we note that Rule 207.1.14 only states that the statute of limitations — which, by definition, is established by the Legislature — does not apply to grievances. Significantly, neither Rule 207.1.14 nor any other legal authority precludes this Court or the EGC from applying the common law doctrine of laches to a grievance. "Laches, an equitable defense, is distinct from the statute of limitations, a creature of law," *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir.

2002), and precludes an action if "an omission to assert a right for an unreasonable and unexplained length of time and under circumstances prejudicial to the adverse party." *Johnson v. Town of Dedham*, 490 A.2d 1187, 1189 (Me. 1985). Thus, "[l]aches . . . may be found even if the applicable statute of limitations has not yet run." *Collett v. Richardson*, 349 Wis. 2d 528, 835 N.W.2d 292 (2013).

■■■ We agree with the jurisdictions that have held that the laches defense may apply to attorney discipline proceedings in certain very narrowly defined circumstances, such as when the delay in instituting the disciplinary proceedings results in prejudice to the respondent. *See, e.g., In re Wade*, 168 Ariz. 412, 814 P.2d 753, 764 (1991); *In re Siegal*, 708 N.E.2d 869, 871 (Ind. 1999) ("There may be factual situations in which the expiration of time destroys the fundamental fairness of the entire proceeding."); *Anne Arundel County Bar Ass'n, Inc. v. Collins*, 272 Md. 578, 325 A.2d 724, 728 (1974) (laches defense applicable to attorney discipline proceedings if there is "prejudice or circumstances making it inequitable to grant the relief sought"). We do not hesitate to hold that prejudice must be presumed when — as here — literally a decade passes between when a grievant knows or should know of the misconduct and the date the grievant actually files a grievance with the EGC. *See, e.g., Tennessee Bar Ass'n v. Berke*, 48 Tenn. App. 140, 344 S.W.2d 567, 571-72 (1961) (dismissing disciplinary proceedings on laches grounds, when grievance was filed nine years after alleged misconduct occurred with no explanation for the delay and respondent was not responsible for the delay).

■■■ In announcing this rule, we emphasize, under current Virgin Islands law, that we shall only presume prejudice with respect to the laches defense when there is a substantial delay in the *initiation* of disciplinary proceedings. Supreme Court Rule 207.7.7(c), as well as our precedents, expressly provide that the EGC's delay in adjudicating a grievance is not grounds for dismissal or mitigation of sanction, unless the respondent can affirmatively demonstrate prejudice as a result of the delay. *Compare Rogers*, 2012 V.I. Supreme LEXIS 79, at *18 (not treating delay in prosecution as mitigating factor when no prejudice alleged by respondent) *with In re Suspension of Welcome*, 58 V.I. 604, 616 (V.I. 2013) (treating delay in prosecution as a mitigating factor when respondent established prejudice by explaining that documents had been lost or destroyed in the intervening years). A ten year delay in *prosecuting*

a grievance is not necessarily equivalent to a ten year delay in *initiating* a grievance. Once a grievance is a filed with the EGC and served on the respondent attorney, Model Rule 8.1(b) and our Rule 207 require the respondent to submit an answer to the EGC in a timely manner.[8] Moreover, upon being notified that a grievance has been filed, a respondent will be able to immediately begin preparation of a defense, including identifying potential witnesses and preserving pertinent documents, such as the client file. And if unacceptable delays occur in prosecuting a grievance after it is filed, the respondent possesses options to safeguard his right to present a defense, such as by taking depositions of critical witnesses to preserve their testimony, *see* V.I.S.Ct.R. 207.2.9(b), or filing a petition for writ of mandamus requesting that this Court mandate the EGC to move the matter forward. *See, e.g., In re Fleming*, 56 V.I. 460, 470 (V.I. 2012). While, as the *Welcome* case demonstrates, a respondent may nevertheless be prejudiced notwithstanding the availability of these options, prejudice cannot simply be presumed. STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 9.32(j) (identifying delays in disciplinary proceedings as a mitigating factor); *Attorney Grievance Comm'n of Md. v. Lee*, 393 Md. 546, 903 A.2d 895, 906 (2006) (explaining that, in an attorney discipline proceeding, it is ordinarily the respondent that bears the burden of proving mitigating factors).

But when a grievance is not even *initiated* until more than a decade after the purported misconduct occurred, an attorney will generally lack the ability to prepare an adequate defense. Since in that circumstance, no disciplinary proceeding has been initiated, an attorney may not use Supreme Court Rule 207.2.9(b) to compel a deposition to preserve testimony; in fact, the attorney will likely not even realize that preservation of testimony is necessary, given that a grievance has not even been filed. And the American Bar Association's Model Rules for Client Files — which this Court has adopted as Supreme Court Rule 211.1.15-2, effective February 1, 2014[9] — permits an attorney to destroy a client file

---

[8] Unlike Superior Court Rule 47, which authorizes entry of default when a party fails to appear in a civil action, Model Rule 8.1(b) codifies an independent ethical obligation for an attorney to respond to a grievance. *See, e.g., In re McLaughlin*, 60 V.I. 230, 241; *In re Collins*, 295 Kan. 1084, 288 P.3d 847, 855 (2012).

[9] *See* Promulgation Order No. 2013-0001 (V.I. Dec. 23, 2013).

10 years after the conclusion of the representation. Accordingly, when — as here — the EGC chooses to prosecute an attorney for misconduct that was not brought to the EGC's attention by a grievant until many years after attorney-client relationship terminated, we conclude that prejudice to the respondent should be presumed, and that the EGC — and not the respondent attorney — should bear the burden of proving, by clear and convincing evidence, that no prejudice occurred or that the delay in filing the grievance was otherwise justified. Consequently, although we find that Joseph violated Model Rule 8.1(b) through his failure to respond, we conclude that the substantive grievances of Allan Peterson and Carl Simon against Joseph should be dismissed.

## D. Neville Potter

In its disposition in the Potter matter, the EGC found that Joseph violated Model Rules of Professional Conduct 1.3, 1.4, 1.5, 1.16, and 8.1(b). We agree with the EGC that Joseph violated Model Rule 8.1(b), since the record reflects that Joseph never responded to Potter's grievance and failed to appear, with no explanation, at the scheduled November 21, 2012 hearing. *See In re Joseph*, 56 V.I. at 499 (failure to file answer or appear at hearing violates Model Rule 8.1(b)). Therefore, we assume the truth of all the factual allegations against Joseph, and limit our review to whether those facts constitute ethical violations. *Id.*

In his grievance, Potter explained that his family retained Joseph as his counsel for a flat fee of $15,000, of which only $12,000 was ultimately paid. According to Potter, Joseph agreed to file a motion to suppress a photo array identification in May 2009, but that by January 2010 no such motion had been filed. Additionally, Potter alleged that he requested that Joseph provide him with copies of all discovery, but that Joseph said that he did "not have time to copy the whole discovery," and never provided him with these materials. Potter also complained that he had only met with Joseph about three or four times in person, that he would not receive a response from Joseph when he called his office more than once per week, and that Joseph refused to spend time explaining things to him because he gets paid to go to trial, not to explain things. Moreover, Potter contended that Joseph essentially did not work on the case, and failed to adequately provide him with updates on the case's progress. When Potter terminated the attorney-client relationship a year later, Joseph failed to account for the $12,000 fee.

We disagree with the EGC that these facts, if accepted as true, constitute violations of any of the enumerated ethical rules. Although the EGC did not identify which subsection of Model Rule 1.4 is implicated, based on its findings, it seems the EGC may have believed that Joseph violated Model Rules 1.4(a)(2)-(4), which require that a lawyer "reasonably consult with the client about the means by which the client's objectives are to be accomplished," MODEL RULES PROF'L CONDUCT R. 1.4(a)(2), "keep the client reasonably informed about the status of the matter," MODEL RULES PROF'L CONDUCT R. 1.4(a)(3), and "promptly comply with reasonable requests for information." MODEL RULES PROF'L CONDUCT R. 1.4(a)(4). The undisputed facts, however, establish that Joseph did, in fact, consult with his client multiple times during the attorney-client relationship. Although the gravamen of Potter's complaint is that Joseph failed to file a motion to suppress, "[i]t is by now well-established that in a criminal trial, defense counsel has the authority to manage most aspects of the defense without first obtaining the consent of the defendant." *United States v. Chapman*, 593 F.3d 365, 367-68 (4th Cir. 2010) (citing *Florida v. Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004)). Thus, Joseph satisfied his obligation under Model Rule 1.4(a)(2) by discussing the possibility of filing a motion to suppress; he was not actually required to file one. Likewise, it is not clear how Joseph's conduct violated Model Rule 1.4(a)(3), given that the certified list of docket entries for Potter's criminal case — which Disciplinary Counsel introduced into evidence at the hearing — reflect that the issue of bail had been adjudicated by Potter's prior counsel and the case was simply awaiting a date for jury selection. In other words, if Joseph did not inform Potter of the status of the matter, it is almost certainly because the status of the matter remained unchanged, with the inactivity attributable to the Superior Court not having set a trial date, rather than to Joseph. Similarly, any potential violation of Model Rule 1.4(a)(4) would be premised on Potter's claim that Joseph failed to provide him with copies of all discovery; however, we agree with the courts that have held that a criminal defendant lacks a right to receive full personal copies of all discovery from his lawyer. *See, e.g., Decker v. Roberts*, No. 11-3069-SAC, 2013 U.S. Dist. LEXIS 35195, *37 (D. Kan. Mar. 14, 2013) (unpublished); *Lee v. United States*, Nos. C10-296-JLR, CR-06-164-JLR, 2010 U.S. Dist. LEXIS 119142, *7 (W.D. Wash. Oct. 8, 2010) (unpublished).

 For similar reasons, we find no violation of Model Rule 1.3, which requires that "[a] lawyer . . . act with reasonable diligence and promptness in representing a client." Although the record reflects that Joseph failed to file a motion to suppress before the motions deadline established by the trial judge, Joseph possessed absolutely no obligation to file such a motion, since it was he, and not Potter, who had the ultimate say on questions of trial strategy. *Nixon*, 543 U.S. at 187. The fact that Joseph may have agreed to file such a motion — as Potter claims — is of no relevance; as the master of trial strategy, Joseph was entitled to change his mind. While we do not know why Joseph failed to file a motion to suppress, we cannot ignore that, on direct appeal, this Court found the suppression argument — which was subsequently raised by his new trial counsel — to have been wholly without merit and unsupported by any legal authority. *Potter v. People*, 56 V.I. 779, 790 (V.I. 2012). In fact, Joseph's failure to file the meritless motion to suppress is fully consistent with furthering Potter's expressed interest to move the litigation forward and proceed to trial.

 We also find no violations of Model Rule 1.5. Although the EGC's disposition does not identify which provision of Model Rule 1.5 was breached by Joseph's conduct, it appears the EGC concluded that Joseph charged an unreasonable fee in violation of Model Rule 1.5(a). However, we disagree with the EGC that a $15,000 flat fee to take a first-degree murder case to trial is excessive. To the extent the EGC considers $12,000 an unreasonable fee for the services actually performed, we note that the record reflects that Joseph attended several hearings before the Superior Court, and that Potter's claim that Joseph performed no work seems premised solely on the fact that Joseph did not file the motion to suppress. While we do not know Joseph's customary hourly rate during the pertinent period, we note that $12,000 translates into 40 hours of work at a rate of $300 per hour,[10] and that it is highly likely that Joseph devoted at least this amount of time to the representation.

 As to the alleged Model Rule 1.16 violation, we note that there is nothing in Potter's grievance or the supporting materials that states that Joseph did not provide an accounting upon termination of the

---

[10] *But see, e.g., Judi's of St. Croix Car Rental v. Weston*, 2008 V.I. Supreme LEXIS 21, at *7 (V.I. May 19, 2008) (unpublished) ($300 per hour rate, which was "higher than normal," contributed to finding that total fee charged to client in that case was unreasonable).

representation. While Potter states that Joseph failed to refund any portion of the $12,000, we cannot infer from this statement that Joseph did not disclose how that fee was earned. Accordingly, we reject all of the EGC's findings of misconduct, except for its holding that Joseph violated Model Rule 8.1(b).

## E. Ezekiel Daniel

As explained earlier, Joseph failed to respond to the Daniel grievance in a timely manner, which caused the EGC to issue a Notice of No Hearing. However, Joseph eventually filed a request for a hearing, which the EGC granted and scheduled for December 17, 2012. Joseph appeared at the hearing, and the EGC ultimately found all of the claims in Daniel's grievance to be without merit. Nevertheless, the EGC found that Joseph violated Model Rule 8.1(b) through his failure to timely respond to the grievance to provide the panel with various documents before the hearing commenced, and recommends that this Court suspend Joseph for six months.

██ ██ We agree with the EGC that, standing alone, Joseph's failure to respond to the grievance violated Model Rule 8.1(b) and permitted the EGC to proceed on a default basis. However, we cannot ignore that the EGC, by granting Joseph's motion for a hearing, permitting Joseph to appear, and weighing the evidence rather than merely accepting the truth of all of Daniel's allegations, effectively relieved Joseph of his obligation to file a written answer. By virtue of his failure to file an answer, the EGC was authorized to proceed on a default basis, and to strike Joseph's untimely request for a hearing from the record. *See In re Suspension of Welcome*, 58 V.I. 236, 247-48 (V.I. 2013). Although Model Rule 8.1(b) requires "*meaningful* cooperation," *id.* at 247 (emphasis in original), the EGC, by granting Joseph's motion and reversing its prior decision to proceed on a default basis, clearly found his cooperation sufficient to allow it to decide the matter on the merits.

██ ██ Similarly, while the EGC is correct that Joseph failed to provide it with certain documents prior to the hearing, we again note that the EGC nevertheless proceeded with the hearing notwithstanding that omission, and — in any event — the EGC does not dispute Joseph's claim that he was not required to provide those documents because they were privileged. *See* V.I.S.CT.R. 207.1.2(b)(2) ("All Respondents have an affirmative duty to cooperate with the Committee, including but not

limited to providing *non-privileged* books and records . . . .") (emphasis added). While the EGC contends that Joseph should have nevertheless notified it in advance that these particular documents were privileged, the EGC has cited to no legal authority for this proposition, and we decline to interpret Supreme Court Rule 207.1.2(b) as requiring a respondent to voluntarily disclose the existence of privileged materials to the EGC. Importantly, Rule 207 anticipates that — as here — a respondent may not wish to disclose certain materials to the EGC, and thus Rule 207.2.8 establishes a comprehensive framework for Disciplinary Counsel to issue, the EGC to review, and this Court or the Superior Court to enforce, a subpoena duces tecum for the production of documents. Therefore, to the extent Disciplinary Counsel or the EGC questioned Joseph's claim that the documents were privileged, or believed that Joseph had failed to disclose non-privileged documents, it should have followed the Rule 207.2.8 procedure, rather than conducting a hearing without the document, ruling in Joseph's favor on the merits, and then using Model Rule 8.1(b) as a basis to sanction Joseph for omissions that he could reasonably have believed, based on the EGC's actions, had been excused. Accordingly, we deny the petition with respect to the Daniel grievance.

## F. Non-Payment of Restitution

We now turn to the matter initiated by the EGC itself, stemming from Joseph's failure to pay restitution to Martinez. When it adjudicated Martinez's grievance, the EGC ordered a public reprimand and directed Joseph to pay $5,000 in restitution. However, neither the disposition form, nor the accompanying memorandum of decision, set a deadline for the payment of restitution. Nevertheless, the record reflects that on November 4, 2011, Disciplinary Counsel wrote and sent a letter to Martinez — which was not also directed to Joseph — asking him to inform her if Joseph failed to pay restitution within 60 days. Disciplinary Counsel also met with Joseph to discuss the restitution matter on December 28, 2011, and sent additional letters on January 10, 2012, and April 11, 2012, requesting that restitution be paid. On May 4, 2012, Martinez complained that restitution had not been paid, which spurred the EGC to *sua sponte* initiate disciplinary proceedings on May 30, 2012. When Joseph failed to file a response, the EGC proceeded summarily without a hearing, and ultimately found that he violated Model Rules 3.4(c) and 8.1(b). We agree with the EGC that Joseph's failure to file an answer or otherwise

565

participate in the proceedings before it constitutes a violation of Model Rule 8.1(b), and therefore in undertaking our review we accept all of the factual allegations against him as true. *See In re Joseph*, 56 V.I. at 499.

 Model Rule 3.4(c) provides that "[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." MODEL RULES PROF'L CONDUCT R. 3.4(c). Even accepting all the factual allegations as true, we find that Joseph did not violate Model Rule 3.4(c) because Joseph's conduct did not violate the rules of the EGC or this Court, or the terms of the restitution order. First, the EGC, in its memorandum of decision itself, explains that a question exists as to whether Joseph had even been served with the Martinez disposition:

> There is some confusion over the date when Attorney Joseph knew that he was required to make restitution. The Disposition Form was signed and dated by the third Panel member on August 3, 2007. Although signed by the Sub-Committee Chairwoman, the date of her signature is omitted. However, it is safe to assume that it was signed sometime after August 3, 2007, since the practice of the Committee is to forward the Disposition Form to the Chair after it has been executed by all Panel members. The Panel's Memorandum of Decision was executed by the Panel Chair . . . on October 14, 2011. However, there is no evidence before the Panel as to when the Respondent was first notified of this obligation.

(EGC Disp. 2-3.) In addition to concerns about notice, this Court notes that neither the Martinez disposition nor the accompanying memorandum establish a date for payment of restitution. Nevertheless, the EGC found that Joseph violated Model Rule 3.4(c) because

> Notwithstanding this, Disciplinary Counsel spoke personally with Respondent on December 28, 2011 to review, among other matters, Respondent's obligation to pay restitution to Mr. Martinez. Respondent agreed that the money would be paid. Further, by letter dated January 10, 2012 Disciplinary Counsel advised Respondent of his obligation to make restitution. Disciplinary Counsel once again reminded the Respondent of his obligation by letter dated April 11, 2012. In sworn testimony on May 3, 2012, Respondent conceded that the restitution to Mr. Martinez had not been paid. To date, this Panel has not been

566

presented with any evidence that Respondent made restitution. Respondent's undisputed failure to make restitution as order[ed] by this Committee is a clear violation of Rule 3.4(c).

(*Id.* at 3.)

██ We disagree with the EGC's analysis. Even if we were to assume that Joseph had actual notice of his obligation to pay restitution to Martinez, and assuming even further that his actual notice constituted a waiver of service requirements — an issue which we do not reach — the record contains no evidence that Joseph, through mere non-payment of restitution, actually violated the EGC's prior disposition, so as to warrant discipline under Model Rule 3.4(c). As noted above, the EGC never set a deadline for Joseph to pay restitution to Martinez. In the absence of any deadlines — whether for immediate payment, payment at some future date, or a payment schedule — we cannot conclude that Joseph knowingly chose not to comply with his obligation to pay restitution. *Cf. State v. Mettenbrink*, 3 Neb. Ct. App. 7, 520 N.W.2d 780, 784 (1994) ("In the case at bar, the court failed to inform Mettenbrink as to whether the restitution must be made (1) immediately, (2) in specified installments, or (3) within a specified period of time. . . . This lack of definitiveness is plain error.") (citation omitted); *United States v. Nucci*, 364 F.3d 419, 421 (2d Cir. 2004) ("[T[he record here is devoid of a proper payment schedule because there is no way to tell whether the district court ordered Nucci to pay the $34,476 restitution at once or in installments."). And while Disciplinary Counsel requested that Joseph pay full restitution — albeit also without setting a specific due date — these demands were not legally binding, given that the Office of Disciplinary Counsel is charged only with investigating and prosecuting disciplinary matters, and lacks authority to adjudicate a claim or to modify an EGC decision. *See* V.I.S.Ct.R. 207.1.2(c) (outlining the duties of Disciplinary Counsel).

██ ██ Moreover, even if the EGC had established a deadline for payment of restitution, the evidence that the EGC relied upon is insufficient to establish that Joseph violated Model Rule 3.4(c). As this Court has previously implied, an attorney's failure to pay restitution may be excused if the non-payment is attributable to the attorney's inability to pay. *Adams*, 58 V.I. at 364. *Cf. Bearden v. Georgia*, 461 U.S. 660, 668-69, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983) (observing that it is "fundamentally unfair" and a violation of due process to revoke probation for

non-payment of restitution when defendant lacks the financial means to pay restitution). Importantly, it is the EGC — and not Joseph — that bears the burden of establishing, by clear and convincing evidence, that an ethical violation occurred. "The clear and convincing evidence standard . . . requires evidence sufficient to 'enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.' " *In re Campbell*, 59 V.I. 701, 716 (V.I. Sept. 14, 2013) (quoting *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 886 (1986)). Even accepting all of the factual allegations against Joseph as true — which we must, in light of his default — we cannot say "without hesitancy" that Joseph willfully refused to pay restitution, as opposed to simply not having the means to pay restitution. Importantly, Disciplinary Counsel could have, through further investigation, assessed Joseph's ability to pay, such as by determining whether he owned any real property or by subpoenaing his bank records. And while not determinative to our analysis, we take judicial notice that Joseph was suspended from the practice of law from April 10, 2012, *see In re Joseph*, 56 V.I. at 507, through his reinstatement on October 25, 2012, *see In re Joseph*, S. Ct. Civ. No. 2011-0099, slip op. at 1 (V.I. Oct. 25, 2012), and therefore could not operate his private law practice during that period. Accordingly, we reject the EGC's holding that Joseph violated Model Rule 3.4(c).

## G. Sanctions

 Having agreed with the EGC that Joseph committed six separate violations of Model Rule 8.1(b), we must now determine the appropriate sanction for his misconduct. As we have previously explained,

> To determine the appropriate sanction, this Court "consider[s] the following four factors: '[1] the duty violated; [2] the lawyer's mental state; [3] the potential or actual injury caused by the lawyer's misconduct; and [4] the existence of aggravating or mitigating factors.' " *Brusch*, 49 V.I. at 420 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 3.0 (1986 as amended 1992)). "The Court considers the first three factors to initially determine the appropriate sanction," and only "consider[s] the presence of any relevant aggravating or mitigating factors to determine whether to depart from that initial determination." *Id.* Furthermore, in crafting the appropriate sanction,

568

this Court is "mindful that the purpose of disciplinary sanctions . . . 'is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.' " *Id.* at 419 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.A., Std. 1.1).

*In re Joseph*, 56 V.I. at 504. Our analysis is complicated, however, by the fact that Joseph only violated Model Rule 8.1(b), an ethical violation that is typically "coupled with other, usually serious, misconduct."[11] *In re Bordelon*, 894 So.2d 315, 323 (La. 2005). Notably, the ABA Standards themselves treat a Model Rule 8.1(b) violation as an aggravating factor, and do not provide explicit guidelines for how a court should proceed when no other ethical misconduct has been proven. Additionally, the very nature of a Model Rule 8.1(b) violation — a complete failure to participate in the disciplinary proceedings — makes it very difficult to determine the lawyer's mental state. And while Joseph, through his counsel, has filed an answer to the EGC's petition with this Court, "unsworn representations of an attorney are not evidence." *Henry v. Dennery*, 55 V.I. 986, 994 (V.I. 2011). Other jurisdictions, when faced with similar situations — a violation of Model Rule 8.1(b) not coupled with any other misconduct — have generally identified a public reprimand as the appropriate baseline sanction. *See, e.g., In re Obert*, 352 Ore. 231, 282 P.3d 825, 844 (2012); *Kentucky Bar Ass'n v. Beal*, 169 S.W.3d 860, 861 (Ky. 2005); *Lawyer Disciplinary Bd. v. Friedman*, 192 W. Va. 358, 452 S.E.2d 449, 453 (1994).

We agree that a public reprimand constitutes the appropriate baseline sanction in this case. While Model Rule 8.1(b) codified an important duty, the injury to the public and the legal profession is relatively slight in this case, given our conclusion that Joseph did not

[11] Although an attorney who violates Model Rule 8.1(b) has typically also committed other misconduct, "cases have required no predicate violation of another rule to support a violation of [Model Rule] 8.1," and "[t]he fact that the violations of the general misconduct rules have accompanied violations of other rules in these cases was serendipitous, not preordained." *In re Comfort*, 284 Kan. 183, 159 P.3d 1011, 1022 (2007) (collecting cases). While we recognize the maxim that "[a] lawyer's time and advice are his stock in trade," Attributed to Abraham Lincoln, OXFORD DICTIONARY OF AMERICAN LEGAL QUOTATIONS 257 (Fred R. Shapiro ed. 1993), the fact that a lawyer is busy does not excuse his failure to comply with his ethical obligations under Model Rule 8.1(b). *See, e.g., In re Matter of Watt*, 701 A.2d 1011, 1012 (R.I. 1997).

commit any misconduct even if all the factual allegations against him were deemed true. And although we have no direct evidence of Joseph's mental state, we find no reason to conclude that Joseph's failure to respond was intentional rather than mere negligence, particularly given that Joseph has participated in the proceedings before this Court.

Having identified a public reprimand as the baseline sanction, we now consider whether any mitigating or aggravating factors warrant an upward or downward departure. Since Joseph failed to participate in the proceedings before the EGC, the record naturally contains no evidence of any mitigating factors. As to aggravation, we note Joseph's history of prior discipline — including his prior suspension — as well as the fact that he violated Model Rule 8.1(b) in six separate, unrelated disciplinary proceedings. While a violation of Model Rule 8.1(b) would ordinarily also constitute an aggravating factor under the ABA Standards, we do not believe that such treatment is warranted in a case where Model Rule 8.1(b) has been the only ethical rule violated.

 Given the presence of two aggravating factors, an upward departure is certainly warranted. Nevertheless, we are not persuaded that a suspension would further the primary purpose of the attorney discipline system, which is not punishment, but protecting the public. *Brusch*, 49 V.I. at 419. Other jurisdictions, when imposing an upward departure from the baseline sanction of a public reprimand for a violation of Model Rule 8.1(b), have imposed relatively short suspensions. *See, e.g., In re Haws*, 310 Ore. 741, 801 P.2d 818, 826-27 (1990). This Court, however, has adopted a presumption against imposing short suspensions, given that short suspensions are unlikely to protect the public but may have a devastating impact on the attorney, particularly when — like Joseph — the attorney is a sole practitioner. *In re Welcome*, 58 V.I. at 257-58. In light of these concerns, we find that, in addition to a public reprimand, placing Joseph on probation for one year, as well as the completion of seven credit hours of CLE in the areas of ethics and law firm management, which shall be in addition to the annual twelve credit hours required by Supreme Court Rule 208(b)(1), represents the appropriate sanction for Joseph's misconduct.

## IV. CONCLUSION

For the foregoing reasons, we find that the EGC only established, by clear and convincing evidence, that Joseph committed six separate

violations of Model Rule 8.1(b). Accordingly, we impose as a sanction a public reprimand, one year of supervised probation, and completion of seven credit hours of CLE.